Harry D. LEWIS, Plaintiff,

v.

**NORFOLK SOUTHERN CORPORATION, Defendant.**

No. CIV.A. 202CV379.

United States District Court, E.D. Virginia, Norfolk Division.

April 17, 2003.

---

James H. Shoemaker, Jr., Patten, Wornam, Hatten & Diamonstein, Newport News, for Plaintiff.

Samuel J. Webster, Timothy M. McConville, John T. McDonald, Willcox & Savage, Norfolk, for Defendant.

### ORDER AND OPINION

FRIEDMAN, District Judge.

The court heard oral argument with respect to the defendant's motion to dismiss and for summary judgment under Federal Rules of Civil Procedure 12(b)(6) and 56. The defendant asserts that any claims premised on three charges that the plaintiff filed with the Equal Employment Opportunity Commission (EEOC) are time-barred. Based on the briefs submitted by the parties, the arguments of counsel at the hearing, and for the reasons set forth below, the court GRANTS the defendant's motion for summary judgment.

### I. PROCEDURAL BACKGROUND

The plaintiff's action is brought under the Age Discrimination Act (ADEA), 29 U.S.C. §§ 621–633a.[1] The plaintiff claims that while he was employed by the defendant, Norfolk Southern, he was subjected to various forms of age discrimination. His complaint alleges three categories of wrongful conduct. Count I alleges denial of promotions on four occasions; Count II alleges denial of pay increases on at least five occasions; and Count III alleges retal-

---

1. The plaintiff's retaliation claim is also premised on Title VII of the Civil Rights Act of 1964.

iation for the plaintiff's opposition to unlawful employment practices, ultimately resulting in his constructive discharge. As a result of this alleged conduct, the plaintiff filed three charges with the EEOC, two during his employment and one after he retired.

The first charge was filed on December 7, 1999. The plaintiff complained of a discriminatory job transfer, three denials of promotions, a denied merit-based pay increase, and a negative performance review in retaliation for an internal complaint regarding age discrimination. The EEOC rendered a "no cause" determination and issued a right to sue notice on April 28, 2000. The second charge was filed June 22, 2000, alleging three specific acts of discrimination: a denied merit pay increase and two denied promotions. This charge was withdrawn twenty-two days later, and the EEOC issued a notice approving the withdrawal and terminating further processing of the matter. On February 15, 2001, the EEOC unilaterally issued a notice of reconsideration and reopened its investigation of this charge's allegations. On August 22, 2001, the EEOC issued its determination letter with notice of right to sue. The defendant asked for a reconsideration of the EEOC "for cause" finding with respect to an alleged act of discrimination asserted in the charge, which was rejected. A second notice of right to sue based on the second charge issued on February 27, 2002. The plaintiff filed his third charge on October 26, 2001, alleging that his early retirement constituted a constructive discharge. The EEOC issued its right-to-sue notice on March 13, 2002. The plaintiff filed his complaint on May 21, 2002.

## II. ANALYSIS

The defendant's motion is pursuant to two alternative avenues: Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure. Both parties' briefs rely on materials outside the plaintiff's complaint; therefore, the court will address the motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b) ("If matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment."). Because the defendant's motion explicitly invoked Rule 56, the plaintiff has been on notice that the court could rule on this basis, and the requirements of a "converted" motion to dismiss are not relevant. Additionally, the court need not afford the plaintiff further time to present additional pertinent material as he has had a fair and full opportunity to do so already.

### A. Standard of Review

Summary judgment is appropriate when the record presents no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P 56(c). While the non-moving party is entitled to have all factual inferences construed in its favor, only facts that might affect the outcome of the suit are to be considered. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The ultimate question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

Entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a party has filed evidence supporting the motion for summary judgment, the non-moving party may not rest upon his com-

plaint, but must instead set forth specific facts in the form of exhibits or affidavits illustrating genuine issues for trial. *See id.* at 322, 106 S.Ct. 2548.

## B. EEOC Requirements

The defendant's argument against the plaintiff's claims primarily is one of timeliness. In essence, the defendant contends that either the plaintiff was late in filing a charge with the EEOC or that the plaintiff was too late in filing the instant lawsuit once the charges were filed. The defendant also contends that the EEOC lacked authority to reconsider the plaintiff's second charge once it was withdrawn. The issues the defendant raises, then, are ones of law and there appear to be no disputed material facts with regard to the timing of the EEOC charges and the timing of the relevant acts of alleged discrimination that they were based on. As such, summary judgment is appropriate if the court resolves the legal issues at hand against the plaintiff.

■■■ As a prerequisite to filing a civil action charging age discrimination, an aggrieved party must first file a charge with the EEOC. In a "deferral" state, like Virginia,[2] this charge must be filed no later than 300 days "after the alleged unlawful practice occurred...." 29 U.S.C. § 626(d)(2). The prospective plaintiff must then wait sixty days before filing a lawsuit, 29 U.S.C. § 626(d), but he has no more than ninety days following the EEOC's issuance of his right-to-sue-notice in which to file the action. The ninety-day requirement operates as a statute of limitations that bars subsequently filed suits.

■■■ The timing requirements for filing a lawsuit following an EEOC right-to-sue notice have been strictly construed. *See Harvey v. City of New Bern Police Dep't,* 813 F.2d 652 (4th Cir.1987) (holding suit filed ninety-one days after notice untimely); *Boyce v. Fleet Finance Inc.,* 802 F.Supp. 1404 (E.D.Va.1992) (ninety-two days). Ameliorating the severe results of such a bright-line rule is the general applicability of waiver, estoppel, and equitable tolling to the two limitations periods. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 392–93, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

■■■ The Supreme Court has stated that equitable tolling is to be used "sparingly." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). The Fourth Circuit has declared similarly that "equitable tolling is a narrow limitations exception.... Courts cannot countenance ad hoc litigation for every missed deadline. The repose that statutes of limitations provide will be lost if their applicability is 'up for grabs' in every case." *Olson v. Mobil Oil Corp.,* 904 F.2d 198, 201 (4th Cir.1990). The Supreme Court has suggested certain contexts where tolling may be appropriate: Where a claimant has received inadequate notice; where a motion for appointment of council is pending and equity justifies tolling until the motion is acted upon; where the court has led the plaintiff to believe she has done all that is required, though she has not; where the affirmative misconduct of the defendant "lulled the plaintiff into inaction," *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984); or where the claim-

---

**2.** The parties agree that Virginia is a deferral state and the 300–day period applies. The plaintiff filed his complaint with the EEOC, which has a work-sharing agreement with the Virginia Council on Human Rights (VCHR). Consequently, a charge filed with the EEOC under federal law is also concurrently filed with the VCHR under state discrimination law, triggering the 300–day limitations period. *See Puryear v. County of Roanoke,* 214 F.3d 514 (4th Cir.2000).

ant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, *Irwin,* 498 U.S. at 96, 111 S.Ct. 453.

██ If the claimant has not been diligent in pursuing his legal remedies or the delay in filing is a result of simple neglect, courts are unwilling to exercise equitable tolling. *See id.* The Fourth Circuit has limited equitable tolling in the employment discrimination context primarily to instances where an "employee's failure to timely file results from either a 'deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.'" *Olson,* 904 F.2d at 201 (quoting *Price v. Litton Bus. Sys. Inc.,* 694 F.2d 963, 965 (4th Cir.1982)).

██ An additional constraint on a discrimination complaint is that the "plaintiff's EEOC charge defines the scope of [his] subsequent right to institute a civil suit." *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247 (4th Cir.2000). The contents of each claim in a complaint must bear a relation to the earlier EEOC charges or the plaintiff risks dismissal for failure to exhaust his administrative remedies. Accordingly, the court's analysis is structured to address each charge rather than each claim. If each charge fails then the lawsuit should be dismissed in its entirety.

As a threshold matter, the court notes that the plaintiff has alleged a violation of Title VII in the third claim of his complaint. *See* Pl's. Compl. at ¶ 30. Because there has been no charge filed with the EEOC under Title VII, the portion of Claim III that is premised on Title VII is dismissed for a failure to exhaust administrative remedies. *See Sloop v. Mem'l Mission Hosp., Inc.,* 198 F.3d 147, 149 (4th Cir.1999).

## C. The Plaintiff's First EEOC Charge

The defendant alleges that any claims premised on discriminatory acts described in the plaintiff's first EEOC charge are time barred in that two years have elapsed since the EEOC issued its right-to-sue notice. The notice was issued April 28, 2000 and the instant suit was filed on May 21, 2002, far in excess of the ninety-day limit. The plaintiff has conceded that his complaint is not timely in this respect, but argues that the continuing violation doctrine revives his claims.

██ The continuing violation doctrine has been applied to "serial violations." If one act in a continuous history of discriminatory conduct falls within the charge filing period, then acts that are plausibly or sufficiently related to that act which fall outside the filing period may be considered for purposes of liability even though these acts cannot serve as the basis for an EEOC charge. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106 (2002)

██ The court perceives two problems with the applicability of this doctrine to the instant facts. First, the court notes that there is a substantial body of case law explicitly declaring that this doctrine does not apply to extend the time to file a lawsuit, but only operates to extend the time to file an EEOC charge. *See Wade v. Knoxville Utils. Bd.,* 259 F.3d 452, 461 (6th Cir.2001) ("The continuing violation doctrine, however, does not relieve a plaintiff of the need to file an action within 90 days of receiving the right-to-sue letter."); *Brown v. Hartshorne Pub. Sch. Dist. No.1,* 926 F.2d 959, 962 (10th Cir.1991); *Graham v. State Farm Mutual Auto. Ins. Co.,* 1992 WL 236277 (E.D.Pa. Sept.9, 1992); *Martin v. Frank,* 788 F.Supp. 821, 825 (D.Del. 1992); *see also Martini v. A. Finkl & Sons Co.,* 1996 WL 667816 (N.D.Ill. Nov.15, 1996); *cf. Sabree v. United Bhd. of Car-*

penters and Joiners Local No. 33, 921 F.2d 396, 402 (1st Cir.1990) ("A knowing plaintiff has an obligation to file promptly or lose his claim. This can be distinguished from a plaintiff who is unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern."). Under this holding, the doctrine would be inapplicable here. Second, the defendant claims that the Supreme Court's holding in Nat'l R.R. Passenger Corp. v. Morgan, eviscerates the continuing violation doctrine outside of hostile environment claims.

In Morgan, the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." See Morgan, 122 S.Ct. at 2072. The court concluded that such acts are easily identified when they occur and as such are immediately actionable unlawful employment practices. Consequently, the statutory language mandating that a charge be filed 180 days after an unlawful employment practice occurred, in most instances, did not allow for the stretching of the filing requirement that the continuing violation doctrine provided. The question, then, is whether the discriminatory acts that the plaintiff alleged in his first EEOC charge are of the kind referred to in Morgan.[3] The court gave some examples of discrete discriminatory acts: termination, failure to promote, denial of transfer, or refusal to hire. See id. at 2073. The Court's opinion suggests that "discrete dis-

criminatory acts" is a very broad category. The Court indicated that discrimination with regard to an individual's "compensation, terms, conditions, or privileges of employment" would constitute discrete acts. See id. at 2071. The Court essentially created a dichotomy of discrete discriminatory acts versus the subtler discriminatory conduct that forms the basis for a hostile environment claim—verbal abuse and other suggestive conduct not always immediately actionable.

■ In the instant case, the plaintiff alleged the following acts in the first EEOC charge: a discriminatory job transfer, three denials of promotions, a denied merit-based pay increase, and a negative performance review in retaliation for an internal complaint regarding age discrimination. The failure to promote is explicitly listed in Morgan. Given the broad inclusiveness of the discrete acts definition, it is clear that the other types of acts that the plaintiff alleges are also discrete discriminatory acts. As a result, the plaintiff cannot derive a benefit from the continuing violation doctrine, and all claims deriving from his first EEOC charge are untimely.

**D. The Plaintiff's Second EEOC Charge**

The defendant asserts that any claims based on the allegations contained in the plaintiff's second EEOC charge are also not timely for more complicated reasons. As discussed above, the plaintiff withdrew this charge twenty-two days after he filed it with the EEOC. The EEOC then sent a notice to the plaintiff approving the with-

---

**3.** The other relevant issue is whether Morgan should be applied to this case. Morgan dealt with Title VII and the instant case concerns the ADEA. The plaintiff conceded at the hearing that Morgan applied in this context. Additionally, the court notes that other courts have already applied the decision to ADEA claims. See Lurie v. Meserve, 214 F.Supp.2d

546 (D.Md.2002); Sherman v. Chrysler Corp., 47 Fed. Appx. 716 (6th Cir.2002) (unpublished). The ADEA and accompanying case law have always borrowed heavily from Title VII, and the continuing violation doctrine itself was first applied in the Title VII context. As a result, there appears to be little reason not to extend Morgan to ADEA cases.

drawal and terminating processing of the matter. Almost seven months later, and more than 300 days following the alleged discriminatory acts, the EEOC unilaterally informed the plaintiff it was reconsidering the charge and revoking its approval of the withdrawal request. Subsequently, the EEOC issued a determination letter and right-to-sue notice regarding this charge. The defendant requested reconsideration of one part of the determination, which was denied. The EEOC then issued a second notice of right to sue and the plaintiff filed within ninety days of that notice. The defendant claims the EEOC lacked the ability to reconsider the withdrawn claim.

First, the defendant contends that the ADEA requires a plaintiff who has filed an EEOC charge to wait for the expiration of a sixty-day "conciliation" period before filing a civil action based on that charge. Because the charge in this instance was withdrawn after twenty-two days, the conciliation period was never satisfied; therefore, the plaintiff did not meet a prerequisite to filing in court. Second, the defendant claims that the EEOC's approval of the plaintiff's withdrawal terminated proceedings on the matter and triggered the ninety-day period to file any lawsuit premised on the acts contained in the charge. This limit on the time to file expired prior to the reconsideration, which could not revive the plaintiff's ability to sue on that particular charge. Finally, the defendant claims that the EEOC lacked the power to reconsider the withdrawn charge, and that the revival of this charge occurred more than 300 days after the alleged discriminatory conduct.

The court is not convinced that the defendant's first two arguments would invalidate the second charge. The conciliation period would have been satisfied by the elapse of time following the reconsidera-tion of the charge. Standing alone, the inability to satisfy the initial conciliation period is not a barrier to this lawsuit. The case the defendant cites in support of its contention, *Duke v. Uniroyal,* 719 F.Supp. 428 (E.D.N.C.1989), did not concern a withdrawn charge that was revived by the EEOC. The plaintiff simply withdrew his charge after fifty-nine days and then filed a lawsuit. The conciliation period was *never* satisfied. These facts are distin-guishable from the instant case where the conciliation period may have been satisfied following the reconsideration.

Additionally, for equitable reasons, the EEOC notice terminating proceedings may not have triggered the ninety-day limit on the time to file a lawsuit. The defen-dant cites *Giessel v. Alliance Credit Union, Inc.,* 2001 WL 1842467 (S.D.Ohio Feb.27, 2001) where the court held that such a notice did trigger the running of the ninety-day period. The court in *Giessel* was quite clear, however, that the notice contained language informing the plaintiff of the time constraints on his time to file a lawsuit. The notice in this case lacked such language. It merely stated that fur-ther proceedings in the matter were termi-nated. There was nothing that would serve as an explicit notification of a right to sue. The court does not need to ad-dress these two contentions in greater de-tail as the defendant's third argument is of greatest importance.

■■■ The defendant claims that the EEOC lacked the authority to reconsider the withdrawn charge. The court agrees. There are two problems with the EEOC reconsideration. The EEOC Area Di-rector who reopened the charge cited 29 C.F.R. § 1601.21(d) as the authority for this action. *See* Pl's. Ex. 4 (EEOC Notice of Reconsideration). Part 1601, however, concerns Title VII and the ADA, not the ADEA. *See* 29 C.F.R. § 1601.1 ("The regu-

lations set forth in this part contain the procedures established by the Equal Employment Opportunity Commission for carrying out its responsibilities in the administration and enforcement of title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990."). Part 1626 concerns enforcement of the ADEA. *See* 29 C.F.R. § 1626.1. There are no apparent regulations cross-referencing any section of Part 1601 with Part 1626. The ADEA regulation concerning withdrawal is 29 C.F.R. § 1626.13, and there is no language authorizing reconsideration, nor does Part 1626 authorize reconsideration under any circumstances. On this fact alone, it appears the EEOC lacked authority to reopen the second charge.

Assuming arguendo that the EEOC has the authority to reconsider an ADEA charge based on the ADA/Title VII regulations in Part 1601, these regulations do not empower the EEOC to reconsider a withdrawn charge. The EEOC's authority to reconsider is limited to three circumstances: where there has been a no cause determination, 29 C.F.R. § 1601.19(b); a reasonable cause determination, 29 C.F.R. § 1601.21(b); or a dismissal pursuant to 29 C.F.R. § 1601.18, 29 C.F.R. § 1601.21(b)(1). These three actions are final administrative determinations, either on the merits or because of a procedural infirmity, such as untimeliness. There is nothing authorizing reconsideration of a withdrawn charge, covered under 29 C.F.R. § 1601.10, once the EEOC has accepted the withdrawal and terminated proceedings. While the regulations clearly allow the EEOC to refuse to accept the withdrawal, the regulations do not authorize reconsideration once the withdrawal has been accepted.

The pervading concern with finality seems to demand this conclusion. Once the EEOC states it is terminating proceedings relating to a charge, a prospective defendant has the right to expect that this forecloses potential litigation when, at most, three hundred days have elapsed since the claimed discrimination. Perhaps a defendant could expect the same claims to be revived in a later charge, but only up to the 300–day limit placed on filing a charge with the EEOC. Beyond that, the defendant has a reasonable expectation that the matter is closed, particularly considering that the EEOC has independent authority to reject the withdrawal and conduct an independent investigation into the matter. The EEOC elected not to do so. Instead, it accepted the withdrawal and stated that "this terminates any further processing of this matter." Def's. Ex. 2–C. Then, the EEOC decided to reconsider the withdrawn charge over 300 days after the offending conduct occurred and seven months after accepting the withdrawal. The defendant rightfully considered the matter over.

One final issue concerns this charge. At the hearing on the motion, the plaintiff asserted, without explaining, that equitable tolling might make the EEOC's procedural conduct valid. Specifically, plaintiff's counsel stated that discovery could prove that he was assured that he could "bring the charge back." The court construes this statement as alleging that the EEOC assured him he could resurrect the withdrawn charge or refile it at a later date. This argument is problematic because it was raised for the first time at the hearing and does not appear to be relevant to the issue before the court regarding the second charge.

The Fourth Circuit has held that "the nonmoving party cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery or moved for a continuance to

permit discovery before the district court ruled." *Evans v. Technologies Apps. & Serv. Co.,* 80 F.3d 954, 961 (4th Cir.1996). The means for objecting to the granting of summary judgment without discovery is the Rule 56(f) affidavit. *See id.* The affidavit should be considered an opposing motion under Rule 56(c), which is required to be served prior to the hearing, thereby enabling the opposing party to present a counter argument. *See* Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2719, at 325–26 (1998).

The plaintiff's request for discovery was not made by affidavit, and the Fourth Circuit places "great weight" on the Rule 56(f) affidavit. *Evans,* 80 F.3d at 961. Nor was the argument made prior to the hearing. At no time outside of a single, brief comment at the hearing has the plaintiff made known any need for discovery, even though he was fully aware that the hearing was on a motion for summary judgment and had full opportunity to present evidence demonstrating there were material facts in dispute. The plaintiff had three months from the filing of the defendant's motion to ascertain whether he needed discovery on this particular matter. If the court had not held the hearing, and it was not required to do so, it would never have heard the plaintiff's contention at all. If the plaintiff believed that the motion for summary judgment was premature in the absence of discovery, this problem should have been addressed through Rule 56(f). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Given that the plaintiff was aware that the court could have ruled without a hearing, the court can only conclude that the plaintiff's eleventh-hour contention probably lacks merit.

Even if the court treated the plaintiff's comments at the hearing as satisfying Rule 56(f), the court is unconvinced that tolling has any relevance to the second charge's deficiencies. It is the EEOC's acts that are at issue, not the plaintiff's. The question before the court concerns the EEOC's authority to revive a withdrawn charge. Whether the plaintiff had the right to file a new charge based on the same conduct is an unrelated matter. More importantly, timeliness, whether the plaintiff's or the EEOC's, is simply not relevant. Tolling can render a plaintiff's untimely filed charge or claim timely. Tolling cannot make valid an EEOC reconsideration not authorized by its own regulations. The court has concluded that the EEOC was without authority to reconsider the withdrawn charge, and it would have lacked this authority whether it was exercised the day after accepting the withdrawal or seven months later.

Timeliness might have been an issue under certain circumstances. For instance, if the EEOC had reconsidered the charge within the 300–day limit on the time to file a charge and the plaintiff had relied on the propriety of this act by not filing a new charge; or if the plaintiff had attempted to file a new charge based on the same facts as the original charge outside of the 300–day time limit based on representations from the EEOC that this act would be timely and proper. In actuality, however, the plaintiff did not file a new charge, nor could he rely on the EEOC's reconsideration because it came outside of the 300–day window. Assuming the plaintiff's contention was true, the EEOC merely told the plaintiff he could refile his EEOC charge. The court has no reason to believe that statement is inaccurate. However, the plaintiff would still have had only 300 days from when the alleged discriminatory act occurred to file an EEOC charge, and that time limit expired before the EEOC revived the withdrawn charge and without the plaintiff filing a new charge. Consequently, no rationale exists upon which to premise any tolling argu-

ment. Considering the plaintiff's tardiness in raising this issue, and the lack of clear relevance to the issue at hand, the court will not permit discovery on this issue.

### E. The Plaintiff's Third EEOC Charge

Finally, the defendant argues that any claims premised on the third EEOC charge must be dismissed because the plaintiff did not file the charge within 300 days of the alleged unlawful practice. This charge asserted that he was compelled to file for retirement on December 29, 2000 as a result of discriminatory acts.[4] According to the defendant, at best, the plaintiff had 300 days from that date to file his charge, giving him until October 25, 2001. The third charge was filed on October 26, 2001, 301 days after the plaintiff filed for retirement. The plaintiff counters that his last day of employment, February 1, 2001, constitutes the date from which the limitations period started to run.

 In general, the 300–day limitations period starts running the day of the discriminatory act not the day the consequences of this act are felt. *See Delaware State Coll. v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). It is clear then that the "final date of employment rule," which the plaintiff clings to, is flatly wrong where an employee is notified he will be terminated but his last day of employment is later. *See id.* at 259, 101 S.Ct. 498; *Price v. Litton Bus. Sys. Inc.,* 694 F.2d 963 (4th Cir.1982). In *Ricks,* the plaintiff claimed that the limitations period accrued on his last day of employment, but the Supreme Court held that the period ran from when he was denied tenure one year earlier, because his termination was an inevitable consequence of this action. Thus, the discriminatory act in a discharge case is the decision to terminate the em-

ployee, which can be earlier than the actual last day of employment.

 The question in this case is what the relevant date would be for a constructive discharge rather than an actual termination and, in particular, whether the court could conclude that this date was later than December 29, 2000. At the hearing, the plaintiff insisted that he was required to fill out other paperwork following his notice of retirement on December 29, whereas the defendant points out that any actual acts of discrimination must have occurred prior to that date. The existing case law points to a date no later than December 29, 2000.

The decision most on point is *Flaherty v. Metromail Corp.,* 235 F.3d 133 (2d Cir. 2000). In *Flaherty,* the Second Circuit concluded that the proper date in the constructive discharge context was the date on which the plaintiff "gave definite notice of her intention to retire...." *Flaherty,* 235 F.3d at 138. Similarly, in *Roy v. Amoco Oil Co.,* 747 F.Supp. 661, 666–67 (S.D.Fla.1990), the court held that the limitations period ran from the date the plaintiff signed his request for early retirement, not the date he actually retired.

Given the logical application of *Ricks* in these decisions, it seems clear that the plaintiff's 300 days to file his EEOC charge began to run no later than December 29, 2000. Any discriminatory acts that contributed to his forced retirement occurred before this date and if one considers the constructive discharge to be the pertinent discriminatory act, then it occurred the date he was "compelled" to submit his application for early retirement. Though the plaintiff may have been only one day late in filing, the court has already

---

4. That December 29, 2000 was the date on which the plaintiff filed for retirement does not appear to be in dispute.

described the strict applicability of the EEOC timing requirements. As the plaintiff has offered no reason for tolling the limitations period, any claims premised on the third EEOC charge are untimely.

## III. CONCLUSION

The court concludes that each of the plaintiff's three EEOC charges are barred as a result of procedural defects. The plaintiff failed to file a civil action based on his first charge within the required time limit, the plaintiff failed to file his third charge with the EEOC within the required time limit, and the plaintiff's withdrawn second charge could not be revived by the EEOC. Furthermore, the plaintiff failed to exhaust his administrative remedies before asserting any Title VII claim. As a result, the claims asserted in his complaint are barred in their entirety. Accordingly, for the reasons discussed above, the defendant's motion for summary judgment is **GRANTED.**

The Clerk is **REQUESTED** to send a copy of this Order to counsel of record.

It is so **ORDERED.**